UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>HOMETOWN WEST II HOMEOWNERS ASSOCIATION et al.,<br><br>        Defendants. | 2:15-cv-01232-RCJ-NJK<br><br>**ORDER** |

This case arises out of a homeowner's association foreclosure sale. Pending before the Court are three Motions for Summary Judgment (ECF Nos. 28–30).

## I.  FACTS AND PROCEDURAL HISTORY

In 2003, Third-Party Defendant David M. Holleb purchased real property at 3208 Bradford Hill Ave., North Las Vegas, Nevada, 89031 (the "Property"), giving the lender a promissory note in the amount of $242,400 (the "Note"), secured by a first deed of trust (the "DOT") against the Property. (*See* Compl. ¶¶ 8, 13, ECF No. 1). Plaintiff Nationstar Mortgage, LLC ("Nationstar") became the beneficiary of the DOT by assignment in 2012. (*See id.* ¶ 14). Holleb defaulted on both the Note and his obligations to Defendant Hometown West II Homeowners Association (the "HOA"), and the HOA conducted a foreclosure sale on August

13, 2013 at which Defendant SFR Investments Pool I, LLC ("SFR") purchased the Property for $13,000. (*Id.* ¶¶ 15, 17–29).

Nationstar sued the HOA and SFR in this Court for: (1) quiet title; (2) violation of the duty of good faith under Nevada Revised Statutes section ("NRS") 116.1113; and (3) wrongful foreclosure.[1]  SFR filed counterclaims and third-party claims for quiet title and slander of title.[2]

The HOA moved to dismiss the Complaint for failure to exhaust administrative remedies, and the Court denied the motion because the affirmative defense of non-exhaustion did not appear on the face of the Complaint.  The Court noted that it would be inclined to grant summary judgment in part if the HOA could show that Nationstar had not sought mediation, as required under state law, as to Nationstar's claim that the HOA failed to apply the CC&R in good faith under NRS 116.1113.

Three motions for summary judgment are now pending before the Court.  First, Nationstar has moved for offensive summary judgment on its own claims and for defensive summary judgment against SFR's counterclaims.  Second, the HOA has moved for defensive summary judgment against Nationstar's claims.  Third, SFR has moved for offensive summary judgment on its counterclaims and third-party claims and for defensive summary judgment against Nationstar's claims.

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

1 The fourth cause of action for injunctive relief is not an independent cause of action.

2 The second cause of action for injunctive relief is not an independent cause of action.  Also, although titled "crossclaims," the claims against Holleb and Realty Mortgage Corp. ("RMC") are in substance third-party claims because they are not brought against the HOA (SFR's only co-Defendant).

Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III.    ANALYSIS**

    **A.    Quiet Title**

        **1.    Equitable Issues**

            **a.    Tender of the Superpriority Amount Before Sale**

The Nevada Supreme Court recently ruled that an association's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." *Shadow*

*Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1110–13 (Nev. 2016).  The Court remanded for further fact-finding in that case but noted that the general rule for gross inadequacy was 20% of fair market value, that the Court had in the past approved sales for as low as 28.5%, and that the apparent 23% ratio in the case before it was not "obviously" inadequate.  *See id.* at 1112 (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).  The Court noted that a foreclosing entity's behavior with respect to a first mortgagee's attempts to redeem the superpriority portion of an association lien before sale is relevant to fraud, unfairness, or oppression.  *See id.* at 1113.

   **i.**  **Gross Inadequacy of Sale Price**

  Nationstar has satisfied its initial burden as to gross inadequacy by providing evidence that the sale price was less than 6% the secured amount. (*See* DOT, ECF No. 28-1 (securing $242,400); Trustee's Deed upon Sale, ECF No. 28-6 (indicating a sale for $13,000)).  Even assuming no down payment and that the fair market value in 2013 was only half the 2003 purchase price—a fair assessment for Nevada real property—the sale price was less than 11% of the fair market value, which is approximately half the amount generally required to avoid a finding of gross inadequacy.  The fair market value of the Property would have to have been roughly $65,000 or less in order for the sale in this case not to have been for a grossly inadequate price.

  SFR does not appear to dispute the sale price but has provided an expert report indicating a $13,000 fair market value. (*See* Brunson Decl. & Report, ECF No. 35-2).  The Court finds that a reasonable jury could accept the theory put forth therein that the appropriate measure of market value should focus not on "traditional" sales of comparable properties but HOA foreclosure sales

of comparable properties.  Basically, the report concludes that because similar homes sold for similar amounts at similar HOA sales, the Property's fair market value was $13,000.  These are issues for a jury to sort out.  The Court will not grant summary judgment to either side on the issue of gross inadequacy of the sale price.

> ### ii.     Fraud, Unfairness, or Oppression

The issue in this case is not fraud, but alleged unfairness and oppression.  Proof of tender of the superpriority portion of a lien followed by a denial of the continuing validity of the first mortgage probably constitutes unfairness and oppression under Nevada law, especially where an HOA or its agent attempts to extract thousands of dollars in subpriority amounts from one whose interest is subordinate only to hundreds of dollars in superpriority amounts, under threat of a clouded several-hundred-thousand-dollar deed of trust.  There is no evidence of a tender of the superpriority amount in this case, but Nationstar has provided other evidence of fraud, unfairness, or oppression under the *Shadow Wood* test.  Nationstar notes that the mortgage protection clause of the CC&R misled potential buyers into thinking the DOT would survive the foreclosure sale, so no investors bothered to bid on the Property at a time when the DOT was undersecured.  *See ZYZZX2 v. Dizon*, No. 2:13-cv-1307, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016) (Mahan, J.) (finding that an HOA had misrepresented to the public the effect of its foreclosure sale on the first deed of trust via a mortgage protection clause in the CC&R, leading to a low sale price).  There is enough evidence here through the mortgage protection clause for a reasonable jury to find fraud, unfairness, or oppression under this theory.  The Court denies summary judgment to SFR on this claim.

> ### b.    Commercial Unreasonableness of the Sale

In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral.  Every

> aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable. Although the price obtained at the sale is not the sole determinative factor, nevertheless, it is one of the relevant factors in determining whether the sale was commercially reasonable. A wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale.

*Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977) (citations omitted).

Although related, this equitable rule is different from the equitable rule of *Shadow Wood*. The *Levers* rule is concerned with the circumstances of the sale generally, as opposed to the treatment of junior lienors in particular. Under *Shadow Wood*, gross inadequacy in price and "fraud, unfairness, or oppression" to the junior lienor are two prongs of a conjunctive test. By contrast, under *Levers* a discrepancy between the sale price and the value of the collateral is only one factor in a totality-of-the-circumstances-type test, although a "wide" discrepancy triggers closer scrutiny of the reasonableness of other aspects of the sale. There is a wide discrepancy here, and given the lack of notice of the sale to Nationstar, the Court will reserve this claim to a jury.

### 2.  Due Process

#### a.  Nationstar's Claim

The Court of Appeals has ruled that a state's creation of non-judicial foreclosure statutes alone does not sufficiently involve a state in a non-judicial foreclosure to implicate state action unless some state actor such as a sheriff or court clerk has some direct involvement in the sale, which is not alleged here. *See Apao v. Bank of N.Y.*, 324 F.3d 1091, 1093–94 (9th Cir. 2003); *Charmicor v. Deaner*, 572 F.2d 694, 695–96 (9th Cir. 1978). The Court therefore grants summary judgment against Nationstar's quiet title claim on the due process issue.

#### b.  SFR's Counterclaim

Because SFR asks the Court to declare of the validity of the sale via its counterclaim, the Due Process Clause of the Fifth Amendment is implicated under the rule of *Shelley v. Kraemer*,

334 U.S. 1 (1948) if a lack of notice of the sale would have been constitutionally problematic had a state entity conducted the sale. *See U.S. Bank N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1076–81 (D. Nev. 2015) (Jones, J.). Nationstar has satisfied its initial burden to point out that there is no evidence of constitutionally sufficient notice of the sale having been given. SFR has not adduced evidence tending to show that Nationstar was given constitutionally sufficient notice of the HOA sale. SFR notes there was no state action in the foreclosure sale itself. But although that prevents a direct Fourteenth Amendment claim by Nationstar, under *Shelley* the Fifth Amendment is a valid defense to a quiet title claim like SFR's in federal court. *See id.* The Court cannot put the government's imprimatur on the foreclosure in this case via a civil judgment declaring it to have been valid. The Court therefore grants defensive summary judgment to Nationstar against SFR's counterclaim for quiet title under the Due Process Clause of the Fifth Amendment.

### 3. Retroactivity of *SFR Investments Pool I v. U.S. Bank*

The Court recently certified to the Nevada Supreme Court the following question: "Does the rule of *SFR Investments Pool I, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) that foreclosures under NRS 116.3116 extinguish first security interests apply retroactively to foreclosures occurring prior to the date of that decision?" *See Christiana Trust v. K&P Homes*, No. 2:15-cv-1534, 2016 WL 923091, at *2 (D. Nev. Mar. 9, 2016). Before certifying the question, the Court anticipated that under Nevada law the decision was not retroactive. *See Christiana Trust v. K&P Homes*, No. No. 2:15-cv-1534, 2015 WL 6962860, at *4–5 (D. Nev. Nov. 9, 2015) (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971); *Breithaupt v. USAA Prop. & Cas. Ins. Co.*, 867 P.2d 402, 405 (Nev. 1994)). The Court will therefore not issue a ruling on

the retroactivity issue at this time. If SFR prevails at trial, the Court will then determine whether to stay judgment during the pendency of the Nevada Supreme Court's resolution of the issue.

### B.     NRS 116.1113

Nationstar alleges the HOA failed to apply the CC&R in good faith as required by NRS 116.1113. Such a determination requires the interpretation and application of the CC&R, which means pre-suit mediation of the claim is required under NRS 38.310. As the Court previously noted, the NRS 116.1113 claim therefore could not survive if a party could show the claim had not been mediated. The Court refused to dismiss at that time because non-exhaustion is an affirmative defense, so dismissal on that basis would be inappropriate where the defense did not appear on the face of the pleading to be dismissed. The HOA has not addressed the mediation issue in its summary judgment motion. Nationstar and the HOA simply ask for summary judgment on the merits of the bad faith issue.

The basis of Nationstar's claim under NRS 116.1113 is that the CC&R subordinate the HOA's lien to first mortgages, and it has provided evidence to this effect:

> <u>Mortgage Protection.</u>  Notwithstanding any other provision within this Declaration, no lien created under this Article V or under any other Article of this Declaration, nor any lien arising by reason of any breach of this Declaration, nor the enforcement of any provision of this Declaration, shall defeat or render invalid the rights of the beneficiary under any Recorded Mortgage of first and senior priority now or hereafter upon a Lot, made in good faith and for value, perfected before the date on which the assessment sought to be enforced became delinquent.

(CC&R § 5.08, Oct. 31, 2001, ECF No. 28-10). The DOT was recorded on June 2, 2005. (*See* DOT 1, ECF No. 28-1). The assessment at issue here became delinquent in late 2011 or early 2012. (*See* Notice of Delinquent Assessment Lien, ECF No. 28-3 (indicating $783.99 past due as of May 7, 2012)). This provision would appear to preserve the first mortgage by prior

contractual agreement notwithstanding the statutory default rule as interpreted by the Nevada Supreme Court.

The HOA has adduced no contrary evidence but argues that because NRS 116.3103 required it to act in the best interests of the association, i.e., to conform to the business judgment rule, and because it did not violate the business judgment rule when it foreclosed on the Property, it cannot have violated NRS 116.1113. The Court rejects this argument. NRS 116.3103 imposes the business judgment rule upon HOAs for the benefit of their members. HOAs must comply with that statute, as well as with other statutes such as NRS 116.1113. An HOA may not escape contractual or tort liability to outside parties by simply noting that its actions did not violate the statutory duties owed to its members, as if NRS 116.3103 provided a ceiling of care as to all duties potentially owed to all persons in all contexts.

Next, it is plain from the CC&R that first mortgagees are intended third-party beneficiaries of the mortgage protection provision, so the HOA's argument that Nationstar as a non-party to the CC&R has no standing to enforce it is not well taken. *See Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 605 (Nev. 2005) (quoting *Jones v. Aetna Cas. and Sur. Co.*, 33 Cal. Rptr. 2d 291, 296 (1994)) ("Whether an individual is an intended third-party beneficiary, however, depends on the parties' intent, 'gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'"); *Morelli v. Morelli*, 720 P.2d 704, 705–06 (Nev. 1986) (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819 (Nev. 1977)). The mortgage protection provision was adopted in the 2001 CC&R a decade after NRS 116.3116 was adopted. The drafters of the mortgage protection provision were presumably aware of the statute and wished to eliminate any possibility of confusion over its application in favor of protecting first mortgages.

1    Finally, the HOA argues that NRS 116.1206 preempts the mortgage protection clause:

2        1.  Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter:

4        (a)  Shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.

Nev. Rev. Stat. § 116.1206(1), (1)(a).  In other words, the HOA argues that NRS 116.1206 prevented the HOA from contracting around NRS 116.3116 via the mortgage protection clause.  But the relevant statutory provision did not become effective until October 1, 2003, *see* S.B. 100, ch. 385, §§ 56, 93(2), 2003 Nev. Stat. 2224, 2255 (2003), and the mortgage protection clause was in effect as of 2001.  The version of NRS 116.1206(1) in effect when the mortgage protection provision was adopted limited itself to CC&R provisions created before January 1, 1992.  *See* Nev. Rev. Stat. § 116.1206(1) (1999).  First mortgagees at that time had the right to rely on mortgage protection provisions like the one at issue here when giving their mortgages.  The Court will not create Contract Clause issues by reading NRS 116.1206 to apply retroactively so as to invalidate CC&R provisions adopted between January 1, 1992 and October 1, 2003.  *Cf. Eagle SPE NV I, Inc v. Kiley Ranch Cmtys.*, 5 F. Supp. 3d 1238, 1244–58 (D. Nev. 2014) (Jones, J.).

    There is no need to address the Contract Clause issue directly, because the 2003 statute does not operate retroactively to limit the 2001 mortgage protection provision here with the clarity required to overcome the presumption against retroactive effect.  *See Sandpointe Apartments v. Eighth Judicial Dist. Court*, 313 P.3d 849, 853 (Nev. 2013).  Although the statute indicates it is retroactive in one respect, it is only retroactive as against the underlying provision the CC&R are alleged to violate.  *See* Nev. Rev. Stat. § 116.1206(1)(b) ("[i]s superseded by the

provisions of this chapter, regardless of whether the provision contained in the declaration, bylaw or other governing document became effective *before the enactment of the provision of this chapter that is being violated*." (emphasis added)). That aspect of retroactivity needn't be invoked here, because the mortgage protection provision alleged to violate Chapter 116 post-dates the lien-priority statute. The important issue here is that NRS 116.1206(1)(b) is not itself retroactive. Parties to CC&R adopted on or after October 1, 2003 were on notice that they would bear the risk of changing regulations going forward. But parties to CC&R contracting before October 1, 2003 had an expectation of the continued vitality of their CC&R provisions without being subject to retroactive nullification by the state via the preemption of contractual clauses at odds with Chapter 116, regardless of the respective dates of the relevant CC&R clauses and conflicting statutes. NRS 116.1206 by its own terms is only retroactive with respect to "the enactment of the provision of this chapter that is being violated." *Id*. That is, NRS 116.1206 applies to CC&R provisions adopted on or after October 1, 2003, regardless of the respective dates of the challenged CC&R provision and the provision of Chapter 116 that the CC&R provision is alleged to violate. But if the Court were to find that NRS 116.1206 applied also to CC&R provisions adopted before October 1, 2003, it would almost certainly create Contract Clause problems. And the legislative history indicates no intent for the statute to operate retroactively in that way. *See* http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2003/SB100,2003.pdf.

In summary, Nationstar is entitled to summary judgment on the claim under NRS 116.1113. The remaining question is the remedy. Potential remedies are the invalidation of the sale, or, if the buyer is a bona fide purchaser for value ("BFP") and the sale cannot therefore in equity be undone, damages against the HOA. Invalidation of the sale is available, however,

1  because SFR is not a BFP. SFR's Rule 30(b)(6) deponent admitted she and Chris Hardin, the
2  manager of SFR, knew of the legal uncertainty of the priority as between deeds of trust and
3  trustee's deeds at HOA foreclosure sales and realized that this uncertainty affected the price at
4  auction. (*See* Kelso Dep. 28–30, ECF No. 33-2).

5       A BFP is a person who pays money for real property before obtaining notice of an earlier
6  interest in the property. 5 Tiffany Real Property § 1262 & n.39.50 (3rd ed. 2015). The traditional
7  common law rule of competing interests in real property is "first in time, first in right." 11 David
8  A. Thomas, *Thompson on Real Property* § 92.03, at 97 (2008) (citing Ralph W. Aigler, *The*
9  *Operation of the Recording Acts*, 22 Mich. L. Rev. 405, 406 (1924) ("first in time was first in
10 right because there was nothing left for the second transferee")). The equity courts created
11 exceptions to the traditional "first in time, first in right" rule. *Id.* § 92.03, at 98. Under the
12 common law, absent estoppel, an earlier claim had priority over a later claim if both claims were
13 legal claims (as opposed to equitable claims). *Id.* § 92.03, at 97. The same was true if both
14 claims were equitable. *Id.* BFP status only mattered under the common law where the BFP had a
15 legal claim and a competing earlier claim to the property was purely equitable. *Id.*

16      Today, the difference between legal and equitable claims does not matter as much as the
17 policies behind recognizing BFP status or not in particular circumstances, and BFP-type
18 exceptions to the common law rule of priority are governed by recording statutes, in any case. *Id.*
19 § 92.03, at 98–99. Recording statutes are categorized as "race," "notice," or "race–notice"
20 statutes. *Id.* § 92.08, at 158. Under notice statutes, an exception to the traditional "first in time"
21 rule is codified for those who give value for an interest in land "without notice or knowledge" of
22 an earlier competing interest. *Id.* § 92.08(b). Race–notice statutes additionally require the later
23 grantee to record his interest before the earlier grantee. *Id.* § 92.08(c). Where notice matters, as
24

under notice and race–notice statutes, one who takes title without warranty can be found to have had inquiry notice of prior unrecorded interests (and therefore not qualify as a BFP) because the grantor's refusal to issue standard warranties of title should put a reasonable and prudent person on notice of potential competing interests. *Id.* § 92.09(c)(3)(C), at 191.

Nevada has a race–notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded."). In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first. It is not genuinely disputed that neither of these elements is satisfied here. SFR had constructive notice of the DOT at the time of the HOA sale because the DOT had been recorded, *see* Nev. Rev. Stat. § 111.315, and the Foreclosure Deed was of course not recorded before the DOT. The general BFP rule in Nevada is:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). Even assuming the issue were whether SFR had notice not only of the DOT but also of the legal possibility that the DOT might survive the HOA foreclosure sale, SFR was not an innocent purchaser in this regard, as admitted by Kelso. Even without the admitted actual notice of the potential defect in the title, SFR was on inquiry notice of the continuing vitality of the DOT, especially considering that the sale price was a tiny fraction of the value of the Property and it knew the winning bidder was to take a trustee's deed without

warranty. *See Berge v. Fredericks*, 591 P.2d 246, 249–50 (Nev. 1979); 11 Thomas, *supra*, § 92.09, at 163 ("Persons who knew about or could have discovered the existence of prior adverse claims through reasonable investigations should not be protected."). And any inquiry to the HOA or its agent alone was insufficient as a matter of law. *See id.* (noting that "reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does not constitute 'adequate inquiry'"). The law was not clear at the time of the sale that the sale would extinguish the DOT, and a reasonable purchaser therefore would have perceived a serious risk that it would not. Indeed, SFR's own appraisal expert has adamantly opined in other cases that the reason for low valuations at HOA foreclosure sales during the relevant time period was the near certainty of subsequent litigation over the continuing vitality of first deeds of trust and the high uncertainty of success on the issue. SFR cannot be said to be a BFP as against the DOT under these circumstances.

### C. Wrongful Foreclosure

Wrongful foreclosure claims in the present context typically rely on an HOA's alleged wrongful rejection of the tender of the superpriority amount of the default prior to the HOA foreclosure sale. In this case, Nationstar has provided no evidence of any tender or attempted tender. It appears to argue that the HOA's foreclosure and subsequent position that the DOT was extinguished constitute wrongful foreclosure. It also notes that inadequacy of sales price can support a wrongful foreclosure action by a junior lienor:

> If the real estate is unavailable because title has been acquired by a bona fide purchaser, the issue of price inadequacy may be raised by the mortgagor or a junior interest holder in a suit against the foreclosing mortgagee for damages for wrongful foreclosure.

Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997). The Court finds that the Nevada Supreme Court would likely entertain such a theory of wrongful foreclosure, as it has typically

followed the Restatement.  Moreover, the depression of the sales price via the mortgage protection clause, as explained, *supra*, can likely support a claim for damages under a wrongful foreclosure theory.  The Court therefore denies summary judgment to the HOA on the wrongful foreclosure claim.

### D.     Slander of Title

The elements of a claim for slander of title are: (1) that the words spoken were false; (2) malice; and (3) special damages. *Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983).  SFR alleges Nationstar slandered SFR's title to the Property when Nationstar recorded certain documents indicating that it still held a security interest against the Property, despite knowing that the DOT had been extinguished by the HOA foreclosure sale. (*See* Countercl. ¶¶ 61–62, ECF No. 10).  SFR notes that the Nevada Supreme Court decided *SFR Investments Pool I, LLC* on September 18, 2014.  The alleged slander was Nationstar's February 4, 2015 recording of a Request for Notice, which stated an interest in the Property. (*See id.* ¶ 37).  But Nationstar has provided evidence showing a good faith belief in the continuing vitality of the DOT based on the mortgage protection clause and the alleged invalidity of the sale under both *Shadow Wood* and *Levers*.  The Court grants summary judgment to Nationstar on this claim.  At a minimum, its implied claim of a lien against the Property was true under NRS 116.1113 alone.

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Nationstar's Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART. Nationstar is entitled to offensive summary judgment on its claim against the HOA under NRS 116.1113 and defensive summary judgment against SFR's counterclaims for quiet title and slander of title. The motion is otherwise denied.

IT IS FURTHER ORDERED that the HOA's Motion for Summary Judgment (ECF No. 29) is DENIED.

IT IS FURTHER ORDERED that SFR's Motion for Summary Judgment (ECF No. 30) is GRANTED IN PART and DENIED IN PART. SFR is entitled to defensive summary judgment against Nationstar's claim for quiet title insofar as that claim is based on the Due Process Clause of the Fourteenth Amendment and offensive summary judgment on its third-party claims against Holleb and RMC, who have not responded. The motion is otherwise denied.

Nationstar's claims for wrongful foreclosure against the HOA and for quiet title against SFR under *Shadow Wood* and *Levers* remain for trial.

IT IS SO ORDERED.

Dated this 7th day of July, 2016.

_____
ROBERT C. JONES
United States District Judge